IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v.    ) | CASE NO: 3:11cr08-WKW |
| ) | |
| DAMIEN MICHAEL PIERCE ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

**I. INTRODUCTION**

On December 28, 2011, defendant Damien Michael Pierce ("Pierce") filed a motion to suppress "the out-of-court identification . . . by Ms. Thomas and Mr. Baskin . . . on the grounds that the procedure used was overly suggestive, defective and prejudicial." (Doc. # 167 at 1). Pierce asserts that because the use of the photographic lineups tainted these witnesses' identifications, any identification testimony during trial should also be suppressed. (*Id*.).

The court held an evidentiary hearing on the defendant's motion to suppress on March 2, 2012. Based on the evidence before the court, the court concludes that the motion to suppress is due to be denied.

**II. FACTS**

The investigation in this case began in October 2009. On August 1, 2009, Ms. J. Thomas ("Thomas") and Mr. D. Baskin ("Baskin") were the victims of a home invasion and car jacking at their residence in Pike Road, Alabama. In February 2010, Agent Jennifer Rudden Conway became aware of the defendant's possible involvement in that crime. (Tr.

Evid. Hr'g at 6-7).

On April 15, 2011, Agent Conway interviewed Thomas regarding information Thomas previously provided to Montgomery County Sheriff's deputies about the August 2009 home invasion and car jacking. Thomas told Conway that three black males entered her home, beat up her boyfriend Baskin, handcuffed him, and then left with Baskin in the trunk of her car. Baskin escaped from the trunk by pulling the interior emergency latch.

Thomas identified Mike Pierce as one of men who committed the home invasion. (*Id*. at 9). According to Thomas, during the home invasion, she was placed on the ground, and the defendant grabbed her by the hair, asked her about a safe, and told her to "quit looking at him." (*Id*. at 10). Immediately following the home invasion, Thomas was interviewed by the Montgomery County Sheriff's deputies. (Gov't Ex. 3) She described her assailant as "a big black dude with a read hat." (*Id*.). She estimated his height at five foot six or five foot seven, and weighing between 290 and almost 325 pounds. (*Id*.) Baskin was also interviewed by Montgomery County Sheriff's deputies immediately following the home invasion. (Gov't Ex. 5). He described one of the men as "brown skin, about 5'10 5"11 in height," between 25 and 30 years old, and wearing a Philadelphia Phillies baseball cap. (*Id*. at 18).

Suspecting that her friend Stephanie Chaney's boyfriend might be involved in the invasion, Thomas began her own investigation. She "called around" to some friends and found out that Chaney's boyfriend, Mike Pierce, had an account on the social networking webiste, MySpace.Com. (Gov't Ex. 5. at 22). Thomas found Pierce's page, and when she

2

and Baskin looked at it, they immediately recognized him from his picture. (*Id*.). Thomas was interviewed again on August 3, 2009. At that time, Thomas told the officers that she saw Pierce's face when he was holding her hair, and she recognized him from his myspace page. (Gov't Ex. 4 at 23-24). She also recognized his red hat.

Conway was able to determine the defendant's name from information provided by Thomas that he was Chaney's boyfriend. Thomas had also met Pierce on two prior occasions. Conway examined Chaney's criminal case file[1] and discovered Pierce listed as an alibi witness for her. (Tr. Evid. Hr'g at 13-14). Once Conway had Pierce's name, she acquired his driver license's picture by inputting his name into the Alabama Tactical System. Using the computer program, Conway created a photographic array by requesting a series of individuals' pictures using parameters of race, gender, age, height, and weight. (*Id*. at 13). Conway selected six photographs to create the lineup. (*Id*. at 15).

On May 16, 2011, Conway met Thomas in the parking lot at Baptist East hospital for the purpose of showing Thomas the photographic lineup. Conway handed Thomas the lineup and asked her if she recognized anyone from the home invasion in August 2009. (*Id*. at 16). Within seconds, Thomas identified the defendant as "the one that she observed in her house" during the home invasion. (*Id*. at 17). Thomas also mentioned she recognized his face and that he was no longer wearing dreadlocks. (*Id*.) Although Thomas had previously been shown photographic lineups by other law enforcement officers, none of the earlier

---

[1] Chaney has been convicted of robbery.

3

photographic arrays contained a picture of the defendant.[2] (*Id*. at 18).

In April 2011, Agent Conway interviewed Baskin. At that time, Baskin identified three men involved in the home invasion, and he described "the individual at the door as five ten." (Tr. Evid. Hr'g at 31). Baskin further described the man as a "black male, two twenty-five, wearing a red hat with a P." (*Id*.). The man approached Baskin allegedly to discuss Baskin's sister. (*Id*.) When Baskin attempted to shut the door, the men entered the house and struck Baskin in the head. (*Id*. at 32). Baskin wrestled with Pierce before he was handcuffed. (*Id*. at 42). The men ransacked the house, stole money from Baskin and then attempted to leave with him.[3] (*Id*. at 32-33).

On June 3, 2011, Conway met with Baskin to show him a photographic lineup. (*Id*. at 33). Conway created the photographic array using the same photographs as in the photographic lineup she showed Thomas, but the photographs were arranged in a different order. (*Id*. at 35). Conway handed the photographic array to Baskin and asked him if he could identify anyone in the lineup. (*Id*. at 37). After about a minute, Baskin identified the defendant. (*Id*.) When asked whether he was sure, Baskin responded "yes, without the dreads."[4] (*Id*.)

---

[2] During a photographic lineup offered by Montgomery County Sheriff's deputies, Thomas identified an individual but stated that she was not sure it was Pierce. (Gov't Ex. 4 at 24). It is undisputed that Pierce's picture was not contained in that photographic lineup.

[3] As previously noted, Baskin escaped from the car by using the emergency trunk release.

[4] Baskin said that Thomas had found a picture of the defendant on myspace and he confirmed that the man in the photograph on the myspace webpage was one of the men involved in the home invasion. (Tr. Evid. Hr'g at 36).

4

### III.  DISCUSSION

In assessing the constitutionality of an out of court identification based on an allegation of impermissibly suggestive identification procedures, this court must first determine whether the out of court identification procedures were unduly suggestive. *See Cikora v. Duggar*, 840 F.2d 893, 895 (11th Cir. 1988) (citations omitted). *See also United States v. Barber*, 132 Fed. Appx. 233, 235 (11th Cir. 2005).  Agent Conway prepared a photographic array, utilizing driver license photographs from the Alabama Department of Public Safety database, which included the defendant and five other persons of similar descriptions.  The photographic array contained six photographs of African-American males, similar in height and weight as the defendant.  The photographic array did not single out the defendant.  When Thomas was shown the photographic array, she immediately identified the defendant.  Baskin was not present when Thomas was shown the lineup.  When Baskin was shown the photographic lineup, he also identified Pierce.  Baskin was shown a photographic array containing the same photographs but arranged differently from the array that Thomas was shown.  Thomas was not present when Baskin was shown the lineup.

At the evidentiary hearing held in this case, the defendant presented no evidence to demonstrate that the out of court identification procedures employed in this case were unduly suggestive.  Indeed, the majority of the evidence presented to the court demonstrated that there was nothing suggestive about the identification procedures used by Agent Conway.  Based on the evidence presented during the evidentiary hearing, the court concludes that the

5

out-of-court identifications were not unduly suggestive.

The defendant argues that while the photographic lines may not have been unduly suggestive, the out-of-court identifications by Thomas and Baskin should be still suppressed because their identifications were tainted by their independent investigation on Pierce's myspace page prior to being shown the photographic lineups by Agent Conway. Even if the court were to assume that Thomas and Baskin's out-of-court identification were tainted by their investigative activities, the defendant would still be entitled to no relief because the alleged unduly suggestive circumstances were not arranged by law enforcement officers. *See Perry v. New Hampshire*, ___ U.S. ___, ___, 132 S.Ct. 716, 720-21 (2012).

> When no improper law enforcement activity is involved, we hold, it suffices to test reliability through the rights and opportunities generally designed for that purpose, notably, the presence of counsel at postindictment lineups, vigorous cross-examination, protective rules of evidence, and jury instructions on both the fallibility of eyewitness identification and the requirement that guilt be proven beyond a reasonable doubt.

*Perry v. New Hampshire*, ___ U.S. ___, ___, 132 S.Ct. 716, 721 (2012).

This is not a case in which the "photographic identification procedure was so [unnecessarily] suggestive as to give rise to a very substantial likelihood of irreparable misidentification," or where the identification procedures "made it all but inevitable that [the witness] would identify [the defendant]." *Perry*, ___ U.S. at ___, 132 S.Ct. at 724 *quoting Simmons v. United States*, 390 U.S. 377, 384-85 (1968) and *Foster v. California*, 394 U.S. 440, 443 (1969). Agent Conway did nothing to prompt Thomas or Baskin to conduct their own investigation into Pierce's identity, nor did she do anything to suggest they identify

Pierce in the photographic lineups. *See Coleman v. Alabama*, 399 U.S. 1, 6 (1970).

Moreover, the defendant conceded at the evidentiary hearing that the allegedly suggestive circumstances were created by the victims' private, independent investigation, and not by law enforcement. Thus, the court concludes that because there was nothing suggestive in the photo array, and any taint of suggestiveness caused by the victims' independent investigation was not due to action by the police, the court does not need to consider the reliability question.

> The fallibility of eyewitness evidence does not, without the taint of improper state conduct, warrant a due process rule requiring a trial court to screen such evidence for reliability before allowing a jury to assess its creditworthiness.

*Perry*, ___ U.S. at ___, 132 S.Ct. at 728.

The defendant has evidentiary tools available to him at trial to challenge the veracity of these witnesses. *See generally Colorado v. Connelly*, 479 U.S. 157, 163 (1986) ("Where the 'crucial element of police overreaching' is missing, the admissibility of an allegedly unreliable confession is 'a matter to be governed by the evidentiary laws of the forum.'")

Thus, the court concludes that the out-of-court identification procedures used by Agent Conway were not unduly suggestive, and that Pierce's motion to suppress should be denied.

## CONCLUSION

For the reasons stated, it is the RECOMMENDATION of the Magistrate Judge that the defendant's motions to suppress (doc. # 167) be denied. It is further

ORDERED that the parties are DIRECTED to file any objections to the said Recommendation on or before **March 23, 2012.**  Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation objected to.  Frivolous, conclusive or general objections will not be considered by the District Court.  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a *de novo* determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982).  *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982).  *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Done this 9th day of March 2012.

                                                /s/Charles S. Coody
                                                CHARLES S. COODY
                                                UNITED STATES MAGISTRATE JUDGE